**FILED**

DEC 2 2 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORN
DEPUTY C...

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

FIREMAN'S FUND INSURANCE
COMPANY,

      Plaintiff,

   v.

CITY OF LODI, CALIFORNIA,
<u>et. al.</u>,

      Defendants.

NO. CIV. S 98-1489 FCD JFM

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    Plaintiff Fireman's Fund Insurance Company ("plaintiff")
brought suit alleging that defendant City of Lodi's ("Lodi")
ordinance, the Comprehensive Municipal Environmental Response and
Liability Ordinance ("MERLO"), violates the Supremacy Clause of
the United States Constitution because MERLO is preempted by the
federal Comprehensive Environmental Response, Compensation and
Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675.[1]

---

[1]   In the related case, <u>Unigard v. City of Lodi</u>, CV S 98-
1712 FCD/JFM, plaintiffs Unigard Insurance Company and Unigard
                             (continued...)

140

1    This matter is before the court on plaintiff's motion for

2    (1) partial summary judgment on its preemption claim asserted

3    pursuant to 42 U.S.C. § 1983 and (2) a permanent injunction

4    prohibiting Lodi from further enforcing MERLO.  Plaintiff's

5    motion follows a remand from the Ninth Circuit Court of Appeals.

6    See Fireman's Fund Ins. Co. v. City of Lodi, 302 F.3d 928, 934-35

7    (9th Cir. 2002), cert. denied, 123 S. Ct. 1754 (2003).  The

8    parties presented oral argument on October 10, 2003.

9                          BACKGROUND[2]

10   **A.   Contamination Discovered within the City**

11   In April, 1989, Lodi first detected tetrachloroethene

12   ("PCE") in a water sample from a new water tank.  Subsequent

13   testing found PCE contamination in the groundwater and several

14   Lodi water wells.  In March, 1992, the Central Valley Regional

15   Water Quality Control Board ("RWQCB") issued a report identifying

16   a cleaning business insured by plaintiff as one potential source

17   of PCE-contaminated wastewater discharged into Lodi's sewer lines

18   and suspected as a source of the soil and groundwater

19   contamination.

20   In 1993, the California State Department of Toxic Substance

21   Control ("DTSC") commenced an investigation of the contamination.

22   _____

23          [1](...continued)
24   Security Company (collectively "Unigard") brought a motion for
     summary judgment and permanent injunction on its complaint and
     adopted Fireman's Fund's briefing.  Accordingly, the findings of
25   preemption and the issuance of a permanent injunction shall apply
     with equal force to plaintiff Unigard in the related case.
26

27          [2]    The Background is drawn from the complaint and the
     Ninth Circuit's decision in Fireman's Fund, 302 F.3d at 934-38.
28   A more detailed history describing the contamination within the
     City of Lodi is recounted in Fireman's Fund, 302 F.3d at 934-35.

In 1994, DTSC initiated an administrative action against selected potentially responsible parties, including Lodi, to address the soil and groundwater contamination.

### B.   1997 Cooperative Agreement

At a meeting on May 6, 1997, Lodi's City Council authorized the City Manager to execute a "Comprehensive Joint Cooperative Agreement" ("Cooperative Agreement" or "Agreement") with the DTSC concerning the investigation and abatement of hazardous substance contamination within the City.  Fireman's Fund, 302 F.3d at 935. Under the Agreement, DTSC was required to act with Lodi in a consolidated effort, providing the oversight, consultation, and cooperation necessary and appropriate to ensure the contamination site was remediated in a timely, competent, and cost-effective manner. Id. at 950 n.21.   In exchange for DTSC's "ongoing and substantial services," the DSTC received in excess of one million dollars.  Id.

Since the discovery of the contamination, Lodi has faced the issue of potential liability.   Indeed, Agreement expressly stated that DTSC may have certain claims against Lodi for the design, construction, operation, and maintenance of its sewer system. Id. at 936.  Despite this acknowledgment of potential liability, the Agreement specifically designated Lodi the "lead enforcement entity," in place of the DTSC, and obligated Lodi to "cause a prompt, comprehensive, and cost-effective investigation and remediation" of the ground and soil contamination.   (Cooperative Agreement, in Ex. D to Decl. of Thomas Hixson ("Hixson Decl."), at 1); see Fireman's Fund, 302 F.3d at 935.

///

3

C.   **MERLO**

To support Lodi's lead enforcement role, the Agreement also required the "prompt enactment and enforcement of a comprehensive municipal environmental response ordinance."[3]  (Cooperative Agreement, in Ex. D to Hixson Decl., at 5.)  Just ninety days later, on August 6, 1997, Lodi's City Council enacted the Comprehensive Municipal Environmental Response Ordinance ("MERLO"), which sets forth a remedial liability scheme partially modeled on CERCLA.  MERLO is the subject of plaintiff's preemption claim and present motion.

MERLO provides Lodi with municipal authority to investigate and remediate existing or threatened environmental nuisances affecting the City and to hold responsible parties or their insurers liable for the cost of Lodi's nuisance abatement activities.  Id.  MERLO incorporated many of CERCLA's standards. Id.  Specifically, MERLO borrowed CERCLA's definition of (1) who may be considered a "potentially responsible party" ("PRP"),[4] (2) who may avoid liability by proving certain affirmative defenses,[5] and (3) who may impose joint and several liability on

---

[3]    Under the Cooperative Agreement, Lodi's "enforcement activities" include "the prompt enactment and enforcement of a comprehensive municipal environmental response ordinance which shall enact into municipal law additional legal authorities to appropriately supplement the City of Lodi's . . . authority under federal, state and local law."  (Cooperative Agreement, in Ex. D to Hixson Decl., at 5.)

[4]    MERLO §§ 8.24.040(A)(1)-(9)(defining nine categories of "persons" who "shall be liable" under Lodi's municipal liability scheme).

[5]    See MERLO §§ 8.24.040(B)(1)-(4)("There shall be no liability under subsection A of this section for *a person*
(continued...)

4

responsible parties.[6]  _Id._  However, in significant departures

from CERCLA, MERLO's liability scheme did not provide a mechanism

for responsible parties to impose costs upon Lodi for its share

of any attributable costs but did provide Lodi recovery for a

broad range of "action abatement costs," including attorney's

fees.  _See id._

Plaintiffs Fireman's Fund Insurance Company and Unigard

brought actions in this court to prevent Lodi from invoking or

enforcing MERLO against its insureds.  _Id._ at 934.  Both insurers

asserted MERLO was preempted by CERCLA based upon field and

conflict preemption.  In separate rulings, this court granted

Lodi's motion to dismiss Unigard's federal preemption claim and

denied Fireman's Fund's motion for partial summary judgment and

permanent injunction.  Both insurers appealed.  The Ninth Circuit

consolidated the appeals of the insurers and issued the _Fireman's_

_Fund_ decision on August 6, 2002.

///

///

///

_____

[5](...continued)
_otherwise liable_ who can establish by clear and convincing
evidence that" the environmental nuisance was caused by (1) an
act of God, (2) an act of War, (3) a third party meeting certain
requirements, or (4) any combination of the three
defenses)(emphasis added).

[6]     _See_ MERLO § 8.24.040(E)("The scope of liability in this
chapter is joint and several for any person who has caused,
created, contributed to, or maintained a single indivisible harm
to public health, welfare or the environment resulting from, or
which may result from, in whole or in any part, an environmental
nuisance and for which there is no reasonable and reliable basis
of apportioning the harm among the _responsible_
_parties_.")(emphasis added).

**ANALYSIS**

## I.   The Remand

The Ninth Circuit described MERLO as a "comprehensive remedial liability scheme modeled on CERCLA and [state environmental law] . . . [which] specifically provides Lodi with municipal authority to investigate and remediate existing or threatened environmental nuisances affected the City, and to hold PRPs or their insurers liable for the cost of the City's nuisance abatement activities." Id. at 936 (citing MERLO §§ 8.24.010-8.24.090). After a lengthy analysis of MERLO and its relationship to CERCLA, the Ninth Circuit concluded "several sections of MERLO are preempted by state and federal law under the doctrine of conflict preemption . . ." Id. at 957. In particular, the Ninth Circuit remanded the two cases and instructed that, if Lodi is a PRP, portions of MERLO would be preempted "to the extent" it legislatively insulated Lodi (1) from contribution liability,[7] or (2) from bearing its share of responsibility,[8] and, (3) granted Lodi the right to recover

_____

[7]   "If Lodi is indeed a PRP, it cannot simply legislate away this potential contribution liability under state and federal law.  For these reasons, we find that MERLO is preempted to the extent that it legislatively insulates Lodi from contribution liability under state and federal law." Fireman's Fund, 302 F.3d at 946.

[8]   "[I]f the district court determines that Lodi is a PRP, Lodi may not escape its share of responsibility by imposing all the costs of cleanup on others. . . . For these reasons, we find that MERLO is preempted to the extent that it legislatively insulates Lodi from bearing its share of responsibility by imposing joint and several liability on other PRPs." Id. at 947.

1  "action abatement costs," including attorney's fees.[9]  <u>See</u>

2  <u>Fireman's Fund</u>, 302 F.3d at 946, 947, 953.

3  **II.   <u>Fireman's Fund</u> and CERCLA Policy**

4       **A.    PRP Status under CERCLA**

5       CERCLA section 107(a) imposes strict, joint and several

6  liability on parties falling within one of the four categories

7  "subject only to the defenses set forth in subsection (b) of this

8  section."   42 U.S.C. § 9607(a)[10]; <u>see</u> <u>Morrison Enters. v.</u>

9  _____

10      [9]    "[A] city that is also a PRP should not be able to
   avail itself of this advantage.  If the district court finds that
11  Lodi is indeed a PRP, it may not legislate for itself a
   litigation advantage by granting itself the right to collect
12  attorney's fees."   <u>Id.</u> at 953.

13      [10]   CERCLA section 107(a) provides:

14  (a)  Notwithstanding any other provision or rule of
        law, and *subject only to the defenses set forth in*
15       *subsection (b)* of this section-

16       (1)  the owner and operator of a vessel or a facility,

17       (2)  any person who at the time of disposal of any
            hazardous substance owned or operated any
18            facility at which such hazardous substances
            were disposed of,

19
        (3)  any person who by contract, agreement, or
20            otherwise arranged for disposal or treatment,
            or arranged with a transporter for transport
21            for disposal or treatment, of hazardous
            substances owned or possessed by such person,
22            by any other party or entity, at any facility
            or incineration vessel owned or operated by
23            another party or entity and containing such
            hazardous substances, and
24
        (4)  any person who accepts or accepted any
25            hazardous substances for transport to
            disposal or treatment facilities,
26            incineration vessels or sites selected
            by such person, from which there is a
27            release, or a threatened release which
            causes the incurrence of response costs,
28                                        (continued...)

McShares, Inc., 302 F.3d 1127, 1132 (10th Cir. 2002) ("Liability attaches to four categories of individuals [under CERCLA section 107(a)] . . . [CERCLA 107(b)] provides very limited defenses to liability."). In other words, section 107(a) defines the "four classes of persons subject to the liability provisions" of CERCLA. Carson Harbor Village Ltd. v. Unocal Corp., 270 F.3d 863, 871 (9th Cir. 2001) (en banc), cert. denied, 535 U.S. 971 (2002); Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 347 (6th Cir. 1998); see Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1300 n.1 (9th Cir. 1997). Those persons are "potentially responsible parties" or "PRPs." Carson Harbor, 270 F.3d at 874 ("Those four categories of persons [subject to liability under 42 U.S.C. §§ 9607(a)] are 'potentially responsible parties' or 'PRPs.'"); Centerior, 153 F.3d at 347 n.8 ("There are four categories of PRPs . . . under 42 U.S.C. §§ 9607(a)(1)-(4)"); Pinal Creek, 118 F.3d at 1300 n.1; New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1120 (3rd Cir. 1997); accord 42 U.S.C. § 9613(f)(1)("Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) . . ."); 40 C.F.R. § 304.12 (defining potentially responsible party, or PRP, as "any person who *may be liable* pursuant to section 107(a) of CERCLA."). Thus, determining PRP *status* under section 107(a) is wholly distinct from application of the narrowly-defined, causation-

---

[10](...continued)
             of a hazardous substance, *shall be liable* . . .

CERCLA § 107(a); 42 U.S.C. § 9607(a)(emphasis added).

based affirmative defenses to CERCLA liability in section 107(b)
or proving the elements of a *claim* for cost recovery or
contribution under CERCLA.

###    B.    Lodi's Interpretation of PRP Status

Lodi asserts that a municipal PRP with a claimed defense
under section 107(b) may proceed as a party without CERCLA
liability by enforcing its own municipal environmental
ordinance.[11]   However, Lodi has never articulated how this
construction of PRP status is consistent with CERCLA's structure
or policies.   It appears such an approach is dramatically at odds
with CERCLA's PRP cost allocation scheme, which encourages the
prompt and voluntary cleanup of hazardous waste sites *before*
*protracted litigation* by imposing, at a very early stage, the
costs of cleanup on parties potentially responsible for the
contamination.

Under CERCLA, Congress intended to impose strict joint and
several liability upon PRPs because "their actions contribute to
the release of contaminated material and increase the cost of
remedial action."   <u>Kaiser Aluminum & Chem. Corp. v. Catellus Dev.</u>
<u>Corp.</u>, 976 F.2d 1338, 1343 (9th Cir. 1992) (citing H.R. Rep. No.
1016, 96th Cong., 2d Sess. 33 (1980), <u>reprinted in</u> 1980
U.S.C.C.A.N. 6119, 6136); <u>see</u> <u>United States v. Union Corp.</u>, 277
F. Supp. 2d 478, 488 (E.D. Pa. 2003) (finding plaintiff City of

---

[11]    Lodi also argues in its opposition that a ruling on
preemption is premature because it has appealed (in a related
case) the issue of whether a PRP with a claimed defense to CERCLA
liability may wield joint and several liability.   However, the
Ninth Circuit has subsequently upheld this court's interpretation
of PRP status.   <u>See</u> <u>People of the State of California v. M & P</u>
<u>Invs.</u>, Nos. 03-15205, 03-15596, at 3 (9th Cir. Dec. 11, 2003)
(unpublished memorandum).

1    Philadelphia a potentially responsible party under CERCLA despite

2    its claimed affirmative defense under 107(b) based upon releases

3    from its sewers); Lincoln Properties, Ltd. v. Higgins, 823 F.

4    Supp. 1528, 1538 (E.D. Cal. 1992) ("In short, as a matter of law,

5    the County may be liable for releases from its facilities--viz,

6    its portion of the sewer and its wells.").   In this case, Lodi,

7    though now adjudged a PRP, relies upon the possible success of a

8    section 107(b) defense in a related, but separate, liability

9    case, City of Lodi v. M & P Investments, CV 00-2441 FCD/GGH ("the

10   M & P case"), in order to *prevent* the prompt and orderly

11   application of CERCLA's cost allocation scheme.   To permit a

12   municipal PRP to await the outcome of its alleged section 107(b)

13   defense before being subject to the restrictions and limitations

14   of CERCLA, undermines the CERCLA process that Congress mandated.

15   The problem here, however, is further compounded by MERLO and

16   Lodi's imaginative legal stratagems employed regarding its legal

17   status.

18       Acting outside the parameters of CERCLA, first, as the

19   "People of the State of California,"[12] then, as a municipality

20   enforcing state nuisance laws, Lodi has continued to assert lead

21   enforcement authority.   As a result, years of litigation have

22   been consumed in efforts to either divine or obscure its true

23   legal status and the justification for its lead enforcement

24   authority.   Consequently, important remediation efforts have been

25

26   _____

27       [12]   See California v. M & P Invs., 213 F. Supp. 2d 1208,
     1217 (E.D. Cal. 2002), aff'd in part, dismissed in part on juris.

28   grounds, 46 Fed. Appendix 876 (9th Cir. 2002)(mem. unpublished
     decision).

brought to a grinding halt.[13]

Such a result undermines the primary CERCLA objective of "effectuat[ing] quick cleanups of hazardous waste sites"[14] and "encouraging voluntary private action to remedy environmental hazards."[15] Morever, to adopt Lodi's position would ignore the express remand of Fireman's Fund and impermissibly allow any potentially responsible municipality, armed with a similar ordinance, to impose its liability on others, thus rendering the congressional goal of prompt remediation of hazardous waste sites a nullity. See Fireman's Fund, 302 F.3d at 948-49.

## III. Lodi is a PRP under CERCLA § 107(a)

### A.   Admission

The court has previously found that Lodi is a PRP within the meaning of CERCLA section 107(a) in the "M & P" case, based upon counsel's admission in open court.[16] (See Mem. and Order, filed

---

[13]   The court notes that several months ago the DTSC took action to initiate remediation.  On May 30, 2003, the DTSC issued an "Imminent and Substantial Endangerment Determination and Order and Remedial Action Order" (the "RAO") to eight entities, seven of which are defendants in the M & P case.  The RAO requires each entity to conduct an extensive set of investigations and implement appropriate removal actions or face penalties of up to $25,000 per day.  The DTSC apparently has assumed a degree of authority that it previously delegated to Lodi, though the court makes no findings in this regard.

[14]   Transtech Indus., Inc. v. A & Z Septic Clean, 798 F. Supp. 1079, 1082 (D.N.J. 1992), appeal dismissed, 5 F.3d 51 (3d Cir. 1993), cert. denied, 512 U.S. 1213 (1994).

[15]   Lincoln Properties, Ltd. v. Higgins, 823 F. Supp. 1528, 1537 (E.D. Cal. 1992).

[16]   The relevant portion of Lodi's admission in open court reads as follows:

MR. DONOVAN:   [I]f the question is, does the City of
(continued...)

11

1   Mar. 31, 2003 in M & P, at 17-18.)[17]

2      Lodi now asserts that its admission is not dispositive of

3   MERLO's preemption because there are issues of fact (1) regarding

4   the maintenance of Lodi's sewer system and (2) *where, if*

5   *anywhere*, the City is a 'PRP' with or without a defense to CERCLA

6   liability." (Lodi Opp. at 12-17) (emphasis in original.)

7   Neither assertion is persuasive.  The court addresses each in

8   turn.

9      In light of the court's previous finding in M & P, Lodi's

10  evidence regarding the condition of its sewer system is

11  irrelevant to MERLO preemption because, as plaintiff points out,

12  such evidence "pertains, if at all, to Lodi's ability to assert

13  the third-party defense under CERCLA § 107(b)(3)" in the M &

14  P case.  (Reply at 13.)  The Ninth Circuit's remand plainly

15  requires evidence that Lodi is within one of the four classes of

16  persons subject to the liability provisions of CERCLA.  See

17  Fireman's Fund, 302 F.3d at 946, 947, 953.  In short, Lodi's

18

19  ────────────────

20      [16](...continued)
                    Lodi fall within the definition of a
21                  party under 107(a) without regard to any
                    other statutes . . . the answer would be
22                  yes.

23  (Rep. Tr., Feb. 28, 2003 in M &P, at p. 71:11-14.)

24      In later colloquies and arguments to the court Lodi has
    sought to limit its admission.  (See Joint Pretrial Statement,
25  filed Nov. 14, 2003 in M & P, at 44-45.)  However, Lodi's
    admission has not been subsequently limited by the court.

26      [17]    As a result of Lodi's PRP admission, the court ruled in
27  M & P that Ninth Circuit authority precluded it from imposing
    preliminary injunctive relief on other alleged potentially
    responsible parties. (See Mem. and Order, filed Mar. 31, 2003, in
28  M & P, at 17-18.)

1   alleged entitlement to an affirmative defense under section

2   107(b) has no bearing on whether Lodi is a PRP or whether MERLO

3   is preempted.

4       Lodi also contends that "the widespread, regional nature of

5   the contamination problem in Lodi" means that plaintiff must

6   prove liability with respect to each "particular site or plume"

7   within the area of contamination.[18]   (Lodi Opp. at 17.)   Thus,

8   Lodi argues, if plaintiff "proves the [sic] that the City is a

9   responsible party with respect to a specific sewer line in the

10  southern section of the City, such proof will not preempt MERLO

11  with respect to a separate plume in the northern section of

12  town."   (Lodi's Opp. at 17.)   Lodi's construction of PRP status

13  is undermined by the text and purpose of CERCLA's cost allocation

14  structure.

15      Contrary to Lodi's assertion, section 107(a) does not impose

16  a requirement that plaintiff trace specific contaminants within

17  the overall hazardous waste site to a particular location where

18  Lodi's sewers released hazardous substances.   "Although it is

19  true that PRP status, by itself, does not generate liability,"

20  once Lodi admitted it was a PRP, the legal consequences of that

21  _____

22      [18]   The "area of contamination" has been defined by the
    DTSC as a an area within the City of Lodi, California, that is
23  "bordered approximately by the Mokelume River to the north,
    Beckman Road to the east, Harney Lane to the south, and Mills
24  Avenue to the west and the surrounding commercial and residential
    area from which Hazardous Substances have been, or are threatened
25  to be, released or where Hazardous Substances have or may come to
    be located."   (Cooperative Agreement, Section IV.(K), in Ex. D to
26  Hixson Decl., at 4.)   In addition, Lodi's complaint in the M & P
    case provides a broad definition of "site," which includes "the
27  environment at, around and in the vicinity of Lodi's central
    business district and peripheral commercial and residential
28  community."   (Compl. in M & P, ¶ 3.)

13

status took hold without respect to the "location" of the release within the contamination site.  See Pinal Creek, 118 F.3d at 1305.  Indeed, section 107 does not even "require a plaintiff to show any direct causal link between the waste each defendant sent to the site and the environmental harm."  Kalamazoo River Study Group v. Menasha Corp., 228 F.3d 648, 655 (6th Cir. 2000).

Under Lodi's interpretation, its PRP status within the "northern" section of the contamination site would not limit enforcement of MERLO in the "southern" section of the contamination site.  Enforcement of MERLO in this manner would allow Lodi to be a PRP for one fractional "region" of contamination while simultaneously being considered the lead enforcement agency within a another fractional "region" of the site.  This anomaly is completely at odds with CERCLA.  Under CERCLA, liability attaches "despite the fact that the defendant PRP was in fact responsible for only a fraction of the contamination."  Fireman's Fund, 302 F.3d at 945; see Morrison, 302 F.3d at 1133.[19]  Thus, Lodi's construction is "not supported by CERCLA's text, is inconsistent with the traditional doctrine of contribution, entails a significant risk of producing unfair results, and runs the risk of creating procedural chaos."  Pinal

---

[19]   Lodi's recent version of compartmentalized "regions" of contamination is at odds with two definitions it has previously utilized to describe the same hazardous waste site. Specifically, the definition used in the Cooperative Agreement, which gave rise to Lodi's "lead enforcement" role, defines the "site" broadly without reference to distinct "regions" or "plumes" of contamination.  (See Cooperative Agreement, Section IV.(K), in Ex. D to Hixson Decl., at 4) (quoted supra note 16.) Similarly, Lodi's complaint in the M & P case does not describe distinct "regions" of contamination. (See Compl. in M & P, ¶ 3) (quoted supra note 16.)

Creek, 118 F.3d at 1303.

Accordingly, Lodi's various proffered arguments notwithstanding, the court reaffirms its previous finding that Lodi is a PRP.  (See Mem. and Order, filed Mar. 31, 2003, at 17-18.)

**B.   Cooperative Agreement**

Although the court has previously found that Lodi is a PRP, plaintiff asserts an alternate ground based upon the Cooperative Agreement which establishes Lodi's PRP status.  The court will address this alternate ground.

According to plaintiff, Lodi's 1997 Cooperative Agreement with the DTSC confers PRP status upon Lodi as a matter of law. Specifically, plaintiff asserts the Cooperative Agreement is an administrative settlement within the meaning of CERCLA section 113(f)(3)(B)[20] because "DTSC covenanted not to sue Lodi, nor

_____

[20]   CERCLA section 113(f)(2)-(3), 42 U.S.C. §§ 9613(f)(2)-(3), provides in relevant part:

(2)   Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. [. . .]

(3)   Persons not party to settlement

(A)   If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

(B)   A person who has resolved its liability to the
(continued...)

15

pursue administrative action against Lodi, for claims relating to releases of the PCE/TCE contamination at issue from the Lodi sewers, in exchange for approximately $1 million in payments for DTSC's past and future response costs." (Mot. for Summ. Judgment at 21.) As a result, plaintiff argues, Lodi is a PRP because "a party that settles some of its CERCLA liability is by definition a PRP." (Reply at 20.)

Aside from invoking Rule 408 of the Federal Rules of Evidence, discussed below, Lodi does not address plaintiff's argument that the Cooperative Agreement gives rise to PRP status. (Lodi Opp. at 17.)

### 1. Admissibility of Agreement

Relying upon Rule 408 of the Federal Rules of Evidence and the court's now-vacated Memorandum and Order of December 31, 2002, in the M & P case, Lodi asserts the Cooperative Agreement is inadmissible to prove liability, fault, or PRP status.[21]

---

[20](...continued)
> United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2). [. . .]

42 U.S.C. §§ 9613(f)(2)-(3).

[21]   In M & P, the court previously analyzed whether the Cooperative Agreement could be introduced by defendant Guild Cleaners, Inc. ("Guild") in order to prove Lodi's liability for environmental contamination and, consequently, preclude Lodi from imposing joint and several liability.  The court rejected "Guild's attempt to use the language of the Cooperative Agreement to prove the City's PRP status" because it ran "counter to Rule 408 and violates the strong public policy favoring negotiated resolution of disputes."  (Mem. and Order, filed Dec. 31, 2002 in M & P, at 21) (emphasis in original.)  On March 31, 2003, the
(continued...)

Rule 408 of the Federal Rules of Evidence prohibits the
introduction of evidence concerning the "(1) furnishing or
offering or promising to furnish, or (2) accepting or offering or
promising to accept, a valuable consideration in compromising or
attempting to compromise a claim which was disputed as to either
validity or amount," in order to *prove liability* for or
*invalidity* of the claim or its amount."  Fed. R. Evid. 408
(emphasis added).[22]  However, Rule 408 "does not require
exclusion when the evidence is offered for another purpose, such
as proving bias or prejudice of a witness, negating a
contention of undue delay, or proving an effort to obstruct a
criminal investigation or prosecution."  Fed. R. Evid. 408.   "The
use of the phrase 'such as' [in Rule 408] implies that the

_____

[21](...continued)
court vacated the December 31, 2002, decision based upon Ninth
Circuit authority precluding Lodi from imposing joint and several
liability through preliminary injunctive relief following its
admission of PRP status.  (See Mem. And Order, filed Mar. 31,
2003 in M & P, at 19.)

[22]    Rule 408 provides:

Evidence of (1) furnishing or offering or promising to
furnish, or (2) accepting or offering or promising to
accept, a valuable consideration in compromising or
attempting to compromise a claim which was disputed as
to either validity or amount, is not admissible to
prove liability for or invalidity of the claim or its
amount. Evidence of conduct or statements made in
compromise negotiations is likewise not admissible.
This rule does not require the exclusion of any
evidence otherwise discoverable merely because it is
presented in the course of compromise negotiations.
This rule also does not require exclusion when the
evidence is offered for another purpose, such as
proving bias or prejudice of a witness, negating a
contention of undue delay, or proving an effort to
obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

ensuing list is not exhaustive, but is only illustrative." United States v. Technic Servs., Inc., 314 F.3d 1031, 1045 (9th Cir. 2002).

In this case, plaintiff does not assert a claim of liability against Lodi and, thus, the Cooperative Agreement is not being introduced to prove Lodi's liability.  Indeed, plaintiff's present motion is premised upon its claim under 42 U.S.C. § 1983 alleging MERLO violates the Supremacy Clause of the United States Constitution.  Lodi's ultimate liability is simply not relevant to this motion.  However, its *legal status* under CERCLA is.

A potentially responsible party under CERCLA may or may not be found ultimately liable for contamination.  However, the statutory and judicial restraints imposed by CERCLA upon such a party is quite another matter.  Here, the issue before the court is whether Lodi's *legal status* under CERCLA was altered by the Cooperative Agreement with the DTSC and, thus, the Agreement is admissible for that purpose.

Accordingly, the court finds Rule 408 is inapplicable and overrules Lodi's objection.  See Fed. R. Evid. 408.

## 2.   Delegation Aspects of the Agreement

The Ninth Circuit interpreted the Cooperative Agreement to "require DTSC to act with Lodi in a consolidated effort, providing the oversight, consultation, and cooperation necessary and appropriate to ensure the Lodi Groundwater Site is remediated in a timely, competent, and cost-effective manner."  Fireman's Fund, 302 F.3d at 950 n.21.  In exchange for DTSC's "ongoing and substantial services," the DSTC received "the consideration enumerated in the Cooperative Agreement."  Id.

18

Although the stated purpose of the Cooperative Agreement is to "resolve all liability which may be asserted against the City of Lodi" based upon Lodi's "design, construction, operation or maintenance of the commercial, industrial and residential storm and sanitary sewer systems," it simultaneously delegates DTSC's authority[23] to Lodi by conferring upon it the status of "lead enforcement entity." As part of this delegation, the Cooperative Agreement requires the "prompt enactment and enforcement of a comprehensive municipal environmental response ordinance." In essence, the parties agreed to reallocate the state's authority to enforce environmental laws to a municipality which settled its liability to the state. Thus, at the outset, the Cooperative Agreement must be viewed as much more than an "administrative settlement" of liability under section 113(f).

The DTSC is entitled to proper deference in carrying out its statutory duties, however, the Cooperative Agreement must still be "fair, reasonable, and faithful" to the objectives of CERCLA. United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990). Neither the DTSC, nor Lodi, have the authority to execute an agreement that "conflict[s] or interfere[s] with the accomplishment and execution of CERCLA's full purpose and objective," by circumventing the legal limitations placed upon

---

[23] Under California Health and Safety Code section 25355.5(a)(1)(C), the DTSC has authority to enter into "agreements" with PRPs that "require[] the party to take necessary corrective action to remove the threat of the release, or to determine the nature and extent of the release and adequately characterize the site, prepare a remedial action plan, and complete the necessary removal or remedial actions, as required in the approved remedial action plan." Cal. Health & Safety Code § 25355.5(a)(1)(C); see Fireman's Fund, 302 F.3d at 935 n.6.

PRPs.  Fireman's Fund, 302 F.3d at 943.  The court need not find,
at this time, that the Agreement "conflicts" or "interferes" with
CERCLA because DTSC's delegation of authority to Lodi is
ancillary to a determination of Lodi's PRP status.  Nevertheless,
the court observes that such delegation of authority is a
critical component of the strategy which led to the enactment of
MERLO and Lodi's assertion of lead enforcement authority.

### 3.  Consequences of CERCLA § 113(f) Settlement

The court of appeals declined to decide whether Lodi, as a
settling municipality, was a PRP as a result of the Agreement
and, instead, left it to this court "to consider this argument in
the first instance."  Id. at 958 n.30.  To answer this question,
the court must analyze the Agreement's substantive terms and
practical effect.  See Canons Eng'g Corp., 899 F.2d at 85
(district court reviewing proposed CERCLA settlement must
"satisfy itself that the settlement is reasonable, fair, and
consistent with the purposes that CERCLA is intended to serve.")
(quoting H.R. Rep. No. 253, Pt. 3, 99th Cong., 1st Sess. 19
(1985) reprinted in 1986 U.S.C.C.A.N. 3038, 3042).

CERCLA section 113 is designed to "maximize the
participation of responsible parties" in hazardous waste cleanup
and expedite that cleanup by "encouraging early settlement, thus
reducing the time and expense of enforcement litigation."[24]

---

[24]  CERCLA's PRP cost allocation scheme creates an
incentive to settle before litigation because all CERCLA
defendants are generally jointly and severally liable and, as a
result, non-settlors must make up the difference between the
settlor's resolved liability and the remaining liability since
the potential liability of the others is reduced "by the amount
                                              (continued...)

20

1  Alcan, 25 F.3d at 1184.  Such settlements further the purpose of

2  CERCLA by providing immediate funds "to enhance environmental

3  protection, rather than the expenditure of limited resources on

4  protracted litigation."  In re Acushnet River & New Bedford

5  Harbor, 712 F. Supp. at 1029.  A party benefits from early

6  settlement with the United States, or a State, because, by

7  operation of section 113(f)(2), such a party becomes immune from

8  contribution claims asserted by other potentially responsible

9  parties for "matters addressed" in the settlement.  Centerior,

10  153 F.3d at 348; Halliburton, 111 F.3d at 1124 n.8; Alcan, 25

11  F.3d at 1186.  However, that party is also limited by CERCLA

12  section 113(f) to asserting claims for contribution.  See

13  Centerior, 153 F.3d at 352 (finding CERCLA section 113(f)

14  permitted only a contribution claim, not a cost recovery claim,

15  where "a potentially responsible party has been compelled to pay

16  for response costs for which others are also liable" and then

17  seeks to recover "reimbursement for such costs."); Akzo Coatings,

18  Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994) (a party

19  entering into consent decree with EPA is itself liable "in some

20  measure for the contamination" and, consequently, "its claim

21  [against other PRPs] remains one by and between jointly and

22  severally liable parties for an appropriate division of the

23  payment one of them has been compelled to make," and such suits

24  are governed by CERCLA section 113(f)).

25

26  _____

27  [24](...continued)
    of settlement," not by the settlor's proportionate share of
    damages it caused.  See In re Acushnet River & New Bedford
28  Harbor, 712 F. Supp. 1019, 1027 (D. Mass. 1989)

Under CERCLA section 113(f)(3)(B), a "person who has resolved its liability" to a state for "some or all of a response action or for some or all of the costs of such action" in an "administrative" settlement "may seek contribution from any person who is not party to a [CERCLA section 113(f)] settlement . . ." 42 U.S.C. § 9613(f)(3)(B). In New Castle County v. Halliburton NUS Corp., 111 F.3d 1116 (3d Cir. 1997), the Third Circuit Court of Appeals interpreted CERCLA section 113(f)(3)(B) to *require* a potentially responsible person who has resolved its liability in an administrative settlement to "use section 113, and only section 113, to obtain an equitable redistribution of liability among other potentially responsible persons." Halliburton, 111 F.3d at 1124 n.8; see Centerior, 153 F.3d at 351 (plaintiffs compelled by EPA administrative order to cleanup hazardous waste could not assert cost recovery claims against defendant PRPs because plaintiffs were themselves PRPs and were limited to contribution claims governed by section 113(f)); Akzo, 30 F.3d at 764 (treating claims by party entering into consent decree with EPA as "one by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make" governed by CERCLA section 113(f)).[25]

---

[25]  Several district court decisions have reached the same result.  See Signature Combs, Inc. v. United States, 248 F. Supp. 2d 741, 747 (W.D. Tenn. 2003) (plaintiffs entering into consent decrees with United States and Arkansas without admitting liability were PRPs because (1) they were compelled to pay for hazardous waste cleanup and (2) continued to be subject to fines and penalties and, thus, were limited to contribution claims under CERCLA as joint tortfeasors); United States v. Compaction
(continued...)

The interpretations of section 113(f) in <u>Halliburton</u>, <u>Centerior</u>, <u>Akzo</u>, and various district courts relied upon (1) the implicit limitations placed upon settling parties in CERCLA's structure[26] and (2) application of common law principles governing joint tortfeasors to CERCLA.  On the latter point, it is important to note that parties compelled to initiate a hazardous site cleanup may not themselves assert joint and several cost recovery claims but are, instead, limited to contribution claims.[27]

_____

[25](...continued)
<u>Sys. Corp.</u>, 88 F. Supp. 2d 339, 351 (D.N.J. 2000) (party limited to contribution claims after entering into consent decree with the United States because, by agreeing to incur substantial costs for its own liability, party satisfied liability requirements of CERCLA section 107(a) and, consequently, was considered a joint tortfeasor); <u>Borough of Sayreville v. Union Carbide Corp.</u>, 923 F. Supp. 671, 679 (D.N.J. 1996) (plaintiff, an admitted PRP, limited to contribution claims and could not rely upon settlement agreement with state environmental agency to assert CERCLA section 107(a) cost recovery claims); <u>Transtech</u>, 798 F. Supp. at 1086 ("The clear import of [CERCLA section 113(f)(1)] . . . is to allow persons situated like plaintiffs in this case to gain reimbursement for their clean-up expenditures from other PRPs--the point of Section 113(f)(1) is to share the costs among the blameworthy parties.").

[26]   <u>See</u> <u>Centerior</u>, 153 F.3d at 352 (PRP that has been compelled to pay for response costs for which others are also liable and then seeks to recover "reimbursement for such costs" is limited by section 113(f)(1) to contribution claims); <u>Halliburton</u>, 111 F.3d at 1124 n.8 ("Application of section 113 does not rest upon a finding of liability, however; a potentially responsible person who has 'resolved its liability to the United States' in a 'judicially approved settlement' may seek contribution.") (citing CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B)).

[27]   <u>See</u> <u>Signature Combs</u>, 248 F. Supp. 2d at 747 (settling plaintiffs were PRPs limited to contribution claims under CERCLA as joint tortfeasors); <u>Compaction</u>, 88 F. Supp. 2d at 351 (party limited to contribution claims after entering into consent decree with the United States); <u>Borough of Sayreville</u>, 923 F. Supp. at 679 (plaintiff, an admitted PRP, could not rely upon settlement
(continued...)

23

In this case, the Cooperative Agreement partially resolved Lodi's liability to the state[28] for past and future response costs. Because Lodi resolved its liability to an agency of the state for some of its response costs based upon the design, construction, and operation of Lodi's sewers, the court finds the Agreement is an "administrative settlement" within the meaning of CERCLA section 113(f)(3)(B). 42 U.S.C. § 9613(f)(3)(B); Halliburton, 111 F.3d at 1124 n.8.

The court further finds the Cooperative Agreement provides an alternate ground for Lodi's PRP status because Lodi (1) incurred substantial liability for the past and future response costs based upon its contribution to contamination at the site, (2) continues to be under the threat of legal compulsion to perform remedial work, and (3) accepted responsibility for cleaning up the contamination site. Halliburton, 111 F.3d at 1124 n.8; Signature Combs, 248 F. Supp.

_____

[27](...continued) agreement to assert cost recovery claims); cf. Centerior, 153 F.3d at 351 (plaintiffs compelled by EPA could not assert cost recovery claims because plaintiffs had acted under legal compulsion and were thus PRPs limited to contribution claims); Transtech, 798 F. Supp. at 1086 (CERCLA section 113(f)(1) governs cost allocation claims among liable parties).

[28]   The Cooperative Agreement obligated Lodi to pay $450,000 to the DTSC within 30 days of entering the Agreement to cover DTSC's past response costs "arising from or related to" the contamination site. (Cooperative Agreement, in Ex. D to Hixson Decl., at 6.) Lodi is also liable to DTSC for up to $1,024,649.55 in past and future response costs, to the extent Lodi cannot recover those from funds from other PRPs. (Id. at 7.) In addition, if Lodi is unable to compel other PRPs to commence remedial work within 24 months from the effective Date of the Cooperative Agreement, Lodi is required to "promptly undertake in the first instance, at its **Sole Cost** and in the sole discretion of the DTSC," certain "interim work." (Id. at 6-7) (emphasis in original.)

2d at 747; <u>Compaction</u>, 88 F. Supp. 2d at 351; <u>Borough of</u>

<u>Sayreville</u>, 923 F. Supp. at 679; <u>see</u> <u>Centerior</u>, 153 F.3d at 351.[29]

**IV.   The Impact of Lodi's PRP Status on Preemption of MERLO**

    **A.   Overview**

In light of the court's finding that Lodi is a PRP, the next issue is whether the portions of MERLO challenged by plaintiff are preempted by CERCLA.

As mentioned above, the Cooperative Agreement required "the prompt enactment and enforcement" of a municipal environmental ordinance "to appropriately *supplement*" Lodi's authority under federal, state and local law.  (Cooperative Agreement, in Ex. D to Hixson Decl., at 5) (emphasis added.)  However, MERLO did not merely "supplement" CERCLA; it far exceeded the reach of CERCLA.

After settling its liability with the DTSC, Lodi enacted an ordinance that effectively launched a variety of highly complex and sophisticated litigation strategies designed to deter any examination of its own liability.  During the years of the litigation, Lodi has repeatedly sought numerous injunctive and dispositive orders and continual reconsiderations and appellate reviews of this court's orders in order to overturn, delay, or deflect rulings on Lodi's legal status.[30]

_____

[29]   As a third ground for proving Lodi's status as a PRP, plaintiff offers evidence that allegedly demonstrates Lodi released hazardous substances into the environment from its sewers.  Because the court has already found Lodi's admission and the Cooperative Agreement establish Lodi's PRP status, the court does not address plaintiff's evidence of alleged releases from Lodi's sewers as a separate basis for PRP status.

[30]   In the related litigation matters, Lodi has filed eight appeals to the Ninth Circuit and two petitions to United States
(continued...)

25

1  **B.   Conflict Preemption**

2   "Under the Supremacy Clause of the United States

3  Constitution, state laws that '*interfere with*, or are *contrary to*

4  the laws of Congress' are *preempted* and are therefore *invalid*."

5  <u>Fireman's Fund</u>, 302 F.3d at 941 (emphasis added) (quoting <u>Gibbons</u>

6  <u>v. Ogden</u>, 22 U.S. (9 Wheat) 1, 211, 6 L.Ed. 23 (1824)).  Whether

7  federal law preempts state law is governed by congressional

8  intent.  <u>Fireman's Fund</u>, 302 F.3d at 941.

9   Preemption is compelled where Congress intends and

10  "Congress' command is explicitly stated in the statute's language

11  or implicitly contained in its structure and purpose.'" <u>Id.</u>

12  (citation omitted).  "CERCLA permits both states and their

13  political subdivisions to enact hazardous waste regulations and

14  pursue additional remedies, *as long as those remedies do not*

15  *conflict or interfere with the accomplishment and execution of*

16  *[CERCLA's] full purpose and objective*."  <u>Fireman's Fund</u>, 302 F.3d

17  at 943 (emphasis added).

18  **C.   Contribution Rights under MERLO**

19   Plaintiff argues that MERLO conflicts with CERCLA

20  because, under CERCLA, a PRP who has incurred response costs may

21  seek contribution from other PRPs whereas under MERLO, Lodi

22  cannot be sued for contribution.  Lodi asserts that, assuming it

23  is found to be a PRP, issues of fact preclude summary judgment

24  for plaintiff because the court must still find that MERLO

25  "*actually* protects Lodi from contribution."  (Lodi Opp. at 12)

26

27

28  [30](...continued)
Supreme Court.

(emphasis in original.)

MERLO § 8.24.090(D)(1) provides:

> Any person alleged *by the city* to be jointly and
> severally liable pursuant to this chapter who has
> entered into an effective settlement, administrative
> settlement or judicially approved settlement shall not
> be liable for claims for contribution, equitable
> indemnity, or partial or comparative equitable
> indemnity regarding matters addressed in the
> settlement.

MERLO § 8.24.090(D)(1) (emphasis added).  In addition,

MERLO § 8.24.090(D)(4)(b) provides that a party settling its

MERLO liability with Lodi may seek contribution from others under

state law.[31]

Plaintiff contends that MERLO insulates Lodi from

contribution claims because, under the scheme, Lodi is a

necessary party to any settlement and, as a result, it cannot be

sued for contribution.  In <u>Fireman's Fund</u>, the Ninth Circuit

agreed and stated: "If Lodi is indeed a PRP, it cannot simply

legislate away this potential liability under state and federal

_____

[31]     MERLO § 8.24.090(D)(4)(b) provides:

> A person who has resolved its liability imposed
> pursuant to this chapter *to the city* for some or all of
> an abatement action or other obligation imposed
> pursuant to this chapter or for some or all of
> abatement action costs in an administrative or
> judicially approved settlement may seek contribution
> pursuant to the general laws of the state of California
> from any person who has not obtained valid contribution
> protection for some or all of the liability imposed
> under this code or pursuant to federal law or the
> general laws of the state of California.

MERLO § 8.24.090(D)(4)(b) (emphasis added).

law.  For these reasons, we find that MERLO is preempted to the extent that it legislatively insulates Lodi from contribution liability under state and federal law."  <u>Fireman's Fund</u>, 302 F.3d at 946.

Here, MERLO § 8.24.090(D)(1) and MERLO § 8.24.090(D)(4)(b) conflict and interfere with the accomplishment and execution of CERCLA's purpose and objective.  Specifically, the lack of contribution rights available under MERLO against Lodi inappropriately insulates Lodi, a PRP, from contribution claims arising out of response costs at the site.  Such an outcome runs counter to CERCLA because parties subject to MERLO's enforcement scheme would be liable for a municipal PRP's full response costs. In contrast, CERCLA section 113(f)(1) operates to limit PRPs to contribution claims where a PRP "has been compelled to pay for response costs for which others are also liable" and then seeks "reimbursement for such costs."  <u>Centerior</u>, 153 F.3d at 352.

By enforcing MERLO's one-sided cost recovery provisions outside of CERCLA's cost allocation scheme, MERLO directly thwarts congressional intent to "effectuate quick cleanups of hazardous waste sites"[32] and encourage voluntary private action to remedy environmental hazards.  <u>See Lincoln Properties</u>, 823 F. Supp. at 1537.

Accordingly, the court finds MERLO § 8.24.090(D)(1) and

---

[32]   <u>Transtech</u>, 798 F. Supp. at 1082.

28

MERLO § 8.24.090(D)(4)(b) improperly insulate Lodi from

contribution liability under CERCLA and, therefore, are preempted.

Fireman's Fund, 302 F.3d at 946.

**D.   Joint and Several Liability under MERLO**

Plaintiff challenges a second portion of MERLO which permits

Lodi, a PRP, to impose joint and several liability for the entire

cleanup cost onto any one PRP.   Plaintiff asserts this conflicts

with CERCLA which does not permit a PRP to impose joint and

several liability on other PRPs.   Lodi argues, again, that issues

of fact preclude summary judgment because the court must still

ascertain whether MERLO "*actually* legislatively insulates Lodi

from bearing its share of responsibility."   (Lodi Opp. at 12)

(emphasis in original.)

The challenged provision, MERLO § 8.24.040(E), provides in

relevant part:

> The scope of liability [under MERLO] . . . is *joint and
> several* for any person who has caused, created,
> contributed to, or maintained a single indivisible harm
> to public health, welfare or the environment resulting
> from, or which may result from, in whole or in any part,
> an environmental nuisance and for which there is no
> reasonable and reliable basis of apportioning the harm
> among the responsible parties.

MERLO § 8.24.040(E) (emphasis added).

After analyzing this provision of MERLO, the Fireman's Fund

court held:

> [I]f the district court determines that Lodi is a PRP,
> Lodi may not escape its share of responsibility by
> imposing all the costs of cleanup on others.   Allowing

29

it do so would interfere with CERCLA's PRP cost allocation scheme, and would implicate the same policy concerns relied upon by this court in <u>Pinal Creek</u> in rejecting a § 107 cost recovery action for PRPs.  For these reasons, we find that MERLO is preempted to the extent that it legislatively insulates Lodi from bearing its share of responsibility by imposing joint and several liability on other PRPs.

<u>Fireman's Fund</u>, 302 F.3d at 947.

MERLO § 8.24.040(E) allows the municipal PRP to impose joint and several liability on others for all of its response costs. However, such full cost recovery is permitted under CERCLA by non-PRPs, such as the EPA or the DTSC.  Lodi is not such a party. Nevertheless, MERLO § 8.24.040(E) permits Lodi, a PRP, to "escape its share of responsibility by imposing all the costs of cleanup on others" *outside* of CERCLA's process.  <u>Id.</u>  Such an unprecedented assumption of power by a PRP directly "interfere[s] with CERCLA's PRP cost allocation scheme" causing inefficiency and delay in the remediation process and prolongation of a litigation process.  <u>See</u> <u>Fireman's Fund</u>, 302 F.3d at 947; <u>Pinal Creek</u>, 118 F.3d at 1303.

Accordingly, the court finds MERLO § 8.24.040(E) conflicts and interferes with CERCLA's cost allocation scheme and, therefore, is preempted. <u>Fireman's Fund</u>, 302 F.3d at 947.

### E.   Attorney's Fees and "Action Abatement Costs" under MERLO

Plaintiff's final challenge is to certain MERLO provisions allowing Lodi to collect attorney's fees and "action abatement

costs."  Lodi contends issues of fact preclude summary judgment for plaintiff because the court must still determine whether MERLO "*actually* gives Lodi a litigation advantage with respect to the ability to collect attorneys' fees."  (Lodi Opp. at 12) (emphasis in original.)

### 1.   Attorney's Fees

MERLO § 8.24.040(A)(9)(a) grants Lodi a right to collect attorney's fees and "action abatement costs." It provides in relevant part:

> Any person . . . who has contributed to or is contributing to the past or present handling, storage, treatment, transportation or disposal of any hazardous substance or pollutant which presents an environmental nuisance . . . shall be liable for:
>
> a.   *All abatement action costs* incurred by the city . . . .

MERLO § 8.24.040(A)(9)(a) (emphasis added).

MERLO defines "action abatement costs" expansively to include: (a) "any and all legal, technical or administrative fees and costs," (b) "interest and other costs of financing incurred by the city," (c) "expert assistance in health, law, engineering and environmental science," (d) "expert witness services," (e) "legal fees (including, but not limited to, internal costs of the city attorney's office or outside legal counsel deemed necessary at the sole discretion of the city)," and (f) "costs of issuing, servicing, and retiring of any financing instruments authorized by the city council."  MERLO §§ 8.24.010(2)(a)-(h).

31

"Under section 9607(a)(4)(B), a private party[33] may recover the 'necessary costs of response.'" FMC Corp. v. Aero Indus. Inc., 998 F.2d 842, 847 (10th Cir. 1993). "CERCLA defines 'response' to include 'enforcement activities related thereto.'" Id. (quoting 42 U.S.C. § 9601(25)). "CERCLA § 107 does not provide for the award of private litigants' attorney's fees associated with bringing a cost recovery action." Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994); see United States v. Chapman, 146 F.3d 1166, 1173-75 (9th Cir. 1998) (distinguishing between recovery of attorney's fees by government and private litigants under CERCLA). Thus, CERCLA plaintiffs are "confined to recovery of 'necessary costs,' which do not include attorney's fees." Fireman's Fund, F.3d at 953 (citing 42 U.S.C. § 9607(a)(4)(B)).

In Fireman's Fund, the Ninth Circuit interpreted MERLO's

---

[33]   Congress did not intend municipalities to recover their response costs pursuant to CERCLA's government cost recovery provision, section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), because CERCLA's definition of "state" does not include municipalities. City of Philadelphia v. Stepan Chem. Co., 713 F. Supp. 1484, 1488 (E.D. Pa. 1989) ("CERCLA's definition of the term 'state' does not include the word 'municipality.' The entities that are included--states, the District of Columbia, Puerto Rico, Guam, Samoa, the Virgin Islands, the Marianas, and United States territories and possessions-- differ so vastly from villages, towns, boroughs, townships, counties, and cities as to be words of exclusion. Even accepting the broad remedial purpose of CERCLA, there is simply nothing in the statute to suggest that Congress intended to allow municipalities to recover their response costs by proceeding under section 107(a)(4)(A) rather than by proceeding as a private party under section 107(a)(4)(B)."); see 42 U.S.C. § 9601(27); City of Toledo v. Beazer Materials and Servs., Inc., 833 F. Supp. 646, 651-52 (N.D. Ohio 1993) (relying upon Stepan to conclude municipalities are not "states" under CERCLA).

provision permitting recovery of attorney's fees and held:

> [A] city that is also a PRP should not be able to avail
> itself of this advantage. If the district court finds
> that Lodi is indeed a PRP, it may not legislate for
> itself a litigation advantage by granting itself the
> right to collect attorney's fees.

Fireman's Fund, 302 F.3d at 953.[34]

MERLO's provision allowing Lodi, despite its PRP status, to recover attorney's fees in the midst of hazardous waste litigation finds no support in CERCLA's text or in judicial precedent.   Clearly, the impermissible recovery of legal fees by Lodi is a distinct litigation advantage which frustrates CERCLA's purpose of effectuating prompt remediation and resolution of disputes.

The Ninth Circuit has noted, "[T]he ability to recover litigation-related attorney's fees does not necessarily advance the pace of cleanup because it may encourage ambitious litigation."  Fireman's Fund, 302 F.3d at 953.   Indeed, as a result of MERLO's extraordinary legislative largesse, it would seem that Lodi's attorneys, unimpeded by CERCLA or typical economic constraints, have often produced unnecessarily voluminous or redundant filings[35] and imaginative ploys that have

---

[34]     The Ninth Circuit also noted that it "did not interpret the Cooperative Agreement to allow Lodi to recover its attorney's fees, nor do we necessarily believe that it could bestow on Lodi the right to recover all of its attorney's fees under the circumstances of this case."  Fireman's Fund, 302 F.3d at 953.

[35]     As an example, both this court and the court of appeals
(continued...)

sent this litigation needlessly down paths from the goals of

CERCLA.  It is obvious that, unlike CERCLA, MERLO

§ 8.24.040(A)(9)(a) *promotes* the very "overlawyering" Congress

intended to eliminate in these types of cases.

Accordingly, the court finds MERLO § 8.24.040(A)(9)(a),

granting Lodi a right to collect attorney's fees outside of

CERCLA, is preempted.  Id.

### 2.  "Action Abatement Costs"

The court must next determine whether MERLO's broad

definition of "action abatement costs" conflicts with the

"necessary costs of response" permitted under CERCLA section

107(a).  See Fireman's Fund, 302 F.3d at 954.  In Fireman's Fund,

the Ninth Circuit declined "to pass judgment" on "action

abatement costs" and, instead, left it "to the district court to

determine if these costs are recoverable under the standard of

'necessary costs of response' if Lodi should prove to be a PRP."

Id.[36]

As outlined above, MERLO provides Lodi the right to recover

_____

[35](...continued)
have had considerable difficulty reigning in Lodi's counsel's
insatiable appetite to file briefs that far exceed reasonable
page limits.

[36]    The Ninth Circuit noted MERLO's definition of "action
abatement costs" reflected a Lodi strategy to recover "costs
related to a financing scheme upon which it has embarked in order
avoid municipal finance mechanisms that would make Lodi's
ratepayers responsible (at least initially) for principal and
interest costs."  Fireman's Fund, 302 F.3d at 954.

extensive categories of ill-defined costs that are not supported by CERCLA's text and cannot be reconciled with Key Tronic's interpretation of permissible "necessary costs of response" under CERCLA.   In Key Tronic Corp. v. United States,[37] the United States Supreme Court held that CERCLA section 107 did not "provide for the award of private litigants' attorney's fees associated with bringing a cost recovery action."   Key Tronic, 511 U.S. at 819.

In determining the types of costs recoverable under CERCLA, the Key Tronic court indicated that costs which are "*closely tied to the actual cleanup* may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B)."   Id. at 820 (emphasis added).   The Court noted that such costs may include "work performed in identifying other PRP's," or work "performed by engineers, chemists, private investigators, or other professionals who are not lawyers," because "tracking down other responsible solvent polluters increases the probability that a cleanup will be effective and get paid for" which "significantly benefited [sic] the entire cleanup effort and served a statutory purpose . . ."   Id.

In contrast, the Supreme Court instructed that fees incurred as "litigation expenses" or "in *pursuing litigation*" are not properly included in recoverable CERCLA costs.   Id. (emphasis

---

[37]   511 U.S. 809 (1994).

35

added).  For example, recoverable costs did not include "legal

services performed in connection with the negotiations between

Key Tronic and the EPA that culminated in the consent decree," or

"[s]tudies that Key Tronic's counsel prepared or supervised

during those negotiations" because such work "primarily

protect[ed] Key Tronic's interests as a defendant in the

proceedings that established the extent of its liability."  <u>Id.</u>

at 820.  "As such, these services do not constitute 'necessary

costs of response' and are not recoverable under CERCLA."  <u>Id.</u>

     Clearly, Congress intended that cost recovery be limited to

cleaning up the environment, not provide an opportunity to profit

at the expense of the environment.  Unfortunately, MERLO provides

just such an opportunity.

     MERLO's definition of "action abatement costs" permits

recovery of costs associated with Lodi's *financing* scheme for its

litigation.  Such costs include: "interest and other costs of

financing incurred by the city," or "costs of issuing, servicing,

and retiring of any financing instruments authorized by the city

council."  MERLO § 8.24.010(2);  MERLO § 8.24.010(2)(h)(ii).

Apparently such a scheme was implemented "in order to avoid

municipal finance mechanisms that would make Lodi's ratepayers

responsible (at least initially) for principal and interest

costs."  <u>Fireman's Fund</u>, 302 F.3d at 954.  The scheme, contrary

to federal environmental law, was designed to pay "lawyers to

build a case for the recoverability of costs," rather than

directing "energy and resources toward cleaning up the site,"[38]

and to "pursu[e] litigation," rather than pay costs "closely tied

to the actual cleanup."  Key Tronic, 511 U.S. at 820.

Similarly, the remaining balance of "action abatement costs"

permitted under MERLO include categories of fees and costs that

are not permitted by CERCLA.  Such fees and costs include, "any

and all legal, technical or administrative fees and costs,"

"expert assistance in health, law, engineering and environmental

science," "expert witness services," and "legal fees (including,

but not limited to, internal costs of the city attorney's office

or outside legal counsel deemed necessary at the sole discretion

of the city)."  See MERLO §§ 8.24.010(2).  The above "action

abatement costs" go far beyond recognized recoverable response

costs under CERCLA because they are not carefully defined or

limited to costs "closely tied to the actual cleanup" and include

many costs incurred "in pursuing litigation."  Key Tronic, 511

U.S. at 820.

Indeed, MERLO's cost recovery scheme generates the

opportunity for a financial windfall for some few fortunate

professionals, as well as Lehman Brothers, Inc., an investment

bank, which has no interest in cleaning up the contaminated

---

[38]   See Fireman's Fund, 302 F.3d at 950.

site.[39]  This profit-seeking concept of cost recovery is the polar opposite of CERCLA and is in direct violation of the goals and objectives set by Congress.  See Fireman's Fund, 302 F.3d at 953.

Accordingly, the court finds the "action abatement costs" defined by MERLO §§ 8.24.010(2)(a)-(h) are preempted by CERCLA because such costs are clearly broader than the definition and judicial interpretation of recoverable "necessary costs of response."  See 42 U.S.C. § 9607(a)(4)(B); Key Tronic, 511 U.S. at 819; Fireman's Fund, F.3d at 953-54.

**F.    Conclusion of Analysis**

In sum, CERCLA is a comprehensive settlement process designed by Congress to further the efficient environmental cleanup and prompt resolution of disputes.  In contrast, MERLO advances different priorities.  Importantly, MERLO is carefully designed to make Lodi impervious to the consequences of CERCLA.  In effect, MERLO elevates the financial interests of Lodi, its attorneys, and others, above the priorities of environmental cleanup and the prompt resolution of disputes.  Such a legislative scheme is in direct conflict with the express goals

---

[39]    In its request for reconsideration of the Magistrate Judge's ruling relating to documents regarding the financing of Lodi's litigation in the M & P case, non-party Lehman Brothers, Inc. stated: "*Lehman invested solely out of a desire to profit from its investments.*"  (Non-Party Lehman Brothers, Inc.'s Req. for Reconsideration by the Dist. Ct. of Mag. Judge's Ruling, filed May 19, 2003 in M & P, at 7) (emphasis added.)

and objectives of Congress and, thus, violates the Supremacy

Clause of the United States Constitution.

**V.   Preemption**

Because the court has held portions of MERLO are preempted

by CERCLA, those provisions are invalid.  <u>See</u> <u>Fireman's Fund</u>, 302

F.3d at 941.  Plaintiff requests that the court enter an order

permanently enjoining Lodi and its officers from enforcing or

invoking any of the preempted provisions against any person who

is a PRP for the contamination at the site.[40]

Based upon the court's findings of preemption, the court

makes the following orders:

    1.    Lodi and its officers are enjoined from enforcing or
        invoking MERLO § 8.24.090(D)(1) and MERLO
        § 8.24.090(D)(4)(b) against any person who
        is a PRP at the site of contamination, as that site is
        defined by this order;

    2.    Lodi and its officers are enjoined from enforcing or
        invoking MERLO § 8.24.040(E)'s provision for joint and

---

[40]   Despite the rulings above, the court finds that the
unchallenged portions of MERLO remain valid because the invalid
provisions are easily severable from the remainder of the
ordinance, and MERLO § 8.24.090(A) contains a severability
clause, which provides:

    If any provision of this chapter or the application
    thereof to any person or circumstances is held invalid,
    such invalidity shall not affect other provisions or
    applications of the chapter which can be given effect
    without the invalid provision or application. To this
    end, the provisions of this chapter are severable. The
    city council declares that it would have adopted the
    ordinance codified in this chapter irrespective of the
    invalidity of any particular portion thereof.

MERLO § 8.24.090(A); <u>see</u> <u>Fireman's Fund</u>, 302 F.3d at 957.

several liability against any person who is a PRP at the site of contamination, as that site is defined by this order;

3.   Lodi and its officers are enjoined from enforcing or invoking MERLO § 8.24.040(A)(9)(a) to collect attorney's fees against any person who is a PRP at the site of contamination, as that site is defined by this order;

4.   Lodi and its officers are enjoined from enforcing or invoking MERLO §§ 8.24.010(2) to collect "action abatement costs" against any person who is a PRP at the site of contamination, as that site is defined by this order.

### CONCLUSION

Based upon the above, plaintiff Fireman's Fund's motion for partial summary judgment is GRANTED and a permanent injunction is issued against defendant City of Lodi in accordance with the above orders.

IT IS SO ORDERED.

DATED: _December 22, 2003_

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT COURT

United States District Court
for the
Eastern District of California
December 23, 2003


* * CERTIFICATE OF SERVICE * *


2:98-cv-01489


Fireman's Fund Ins

    v.

City of Lodi

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  December 23, 2003, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


    Terry James Houlihan           MP/FCD
    Bingham McCutchen LLP
    Three Embarcadero Center
    Suite 1800
    San Francisco, CA  94111

    Michael C Donovan
    Envision Law Group
    3717 Mount Diablo Boulevard
    Suite 100
    Lafayette, CA  94549-2071


                                    Jack L. Wagner, Clerk

                              BY:
                                        Deputy Clerk